is case number 417-0603, and it is entitled C.B. Bloomington Property v. Frontier North. For the appellant we have Mr. Schultz. And how do you pronounce that sir? Schultz. Okay. And for the appellee we have Mr. Amundson. Amundson. Okay, so is the D silent? Amundson? Okay, Amundson. Okay, and you're arguing, is that correct? Correct. And then we have Mr. Lenz, who has a very easy-to-pronounce last name. I appreciate that. All right, counsel, you may proceed. Thank you. I may have placed the court and counsel. I would like to begin by indicating that as attorney for C.B. and I'll just refer to the appellant as C.B. and the appellee as Frontier to make things quick and simple. The issue here, I believe, is can a contract for the sale of real estate be enforced via an email signature as opposed to a handwritten, inked signature? Let me ask you, counsel. Are you sure? You said an email signature. So we're not talking about an electronic signature, right? No. We're talking about, because someone indicated they are the person who wrote the email, that that should constitute a signature. Right. It's not slash S slash like we do here in the appellate court. Well, just to follow up on that, because that was my inquiry as well, there is no email signature in this case, is there? Yes. If you will look at the, I believe it was June 20 at 1236 p.m., Mr. Dexter Craig for Frontier signed off on the email by putting his full name on there, stating his position with the company, putting his return. Okay, just so I understand then, the signature on the email you're saying is the equivalent as a signature on the contract for real estate? Yes. And I would also point out, I would like to point out that I don't believe a signature in any form is really necessary as long as there's no question that the party has had a meeting of the minds. Then it becomes, can this be enforced? And has the email that accompanied or had the contract attached to it sufficient to bind the maker of the email and the maker of the contract? It was all Frontier's doing. So Frontier is generating all this unlike what we see in the case law. And the reason this has never come up is I think we're on the other side of what has generally been the case. Had CB sent a contract or an offer over to Frontier, then Frontier would have to... If there was an exchange of letters instead of emails, would you be making the same argument? Or is your argument unique to the fact this is over the computer? No, I believe my argument is pretty straightforward. I think it's only unique in that the Illinois courts haven't taken on the issue of what an email or a text has in terms of binding effect. As I pointed out in a Texas case and a Massachusetts case, Dittman and St. John's Holdings, they found that those emails even in one, a text message was sufficient to bind the sender. And when we couple that email, it's not negotiations because if it was negotiations, no, we wouldn't be here. And number two, when you send a property, it's no longer negotiations. It's all done. It's wrapped up in a package. And when the other side who is wanting to buy signs off, we have an acceptance. Well, counsel, tell me, what are the implications of the fact that, I'm assuming it was you or someone with your office, after you received the contract, the email with the contracting, apparently a change had to be made and then it was sent again. And then you indicate, your client indicates, please return a copy of the agreement to me once it has been signed by defendant's representative. That doesn't sound like a done deal to me. I think, what would a signature have accomplished? Why were you requesting a signature? Except an acceptance. That, in my thinking, doesn't wash. There was no reservation made in the acceptance. They signed the contract. The contract was a done deal at that point. If there wasn't a contract here, the whole argument of We don't discuss statute of frauds. There has to have been a meeting of the minds. And I would point out, as I did, that the maker of the contract, Frontier, put in all caps, time is of the essence. We've got a June 20th email with contract, closing June 30th, which is the effective date. And time is of the essence. If that isn't an agreement, then I guess I don't understand what a contract is. My thinking here is that my client clearly believed they were bound. They immediately ordered out title, which in this contract, unlike most, the buyer was required to do all the work and pay all the expenses. All Frontier was to get was $115,000 and then they were done. They attached the deeds to their contract, which was part of the Here's the contract. It's been approved by legal today. George Wood, who was the attorney at the time, then says, change the name because you got the wrong name. They come back within 80 minutes with a new contract with a new name on it. And George Wood sends it back, signs and says, I'm ordering title right now. Nine days go by before Frontier sends an email saying, our strategic business needs have changed. Bye. And so they knew that they were bound on all of this and why wait nine days to scotch the deal when you already know the other side has gone to the expense of ordering out title, which they were contractually required to do. If this signature, Inc., was so important, then why wait all those days before saying, we're pulling the plug? Counsel, can I go back for a moment? You indicated that if it wasn't a contract, then there should be no discussion of the statute of frauds. That's because the statute of frauds deals with whether or not you can bring an action to enforce the contract if it is for a certain amount and not signed. So it doesn't preclude the existence of a contract. Do you disagree with that? The statute of frauds is intended to prevent fraud. And here, there's no way that could have happened because the maker of the documents is the one who is now, instead of using the shield of the statute of frauds to prevent a fraud or something nefarious going on, is using it as the weapon to avoid the contract when, in fact, they changed their mind and got a better deal. But I still have my initial question. Does the statute of frauds preclude the existence of a contract? Do we have to have, if we have a contract, you're saying that if it's not a contract, then we can't discuss statute of frauds. But the statute of frauds does allow for a contract, but if it's not a contract, would you agree with that? The statute of frauds doesn't require an inked signature. The statute of frauds doesn't even come into play, in my humble opinion, if there's not already a contract because it's a moot issue. Well, the statute of frauds says that no action shall be brought to charge any person upon any contract for the sale of lands. And basically, that's not all it says, but unless such contract or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith. So let's assume there is a contract. Alright. If it's not signed, then the statute of frauds comes into play, right? The statute of fraud comes into play and it is not an absolute. As long as some writing, and I've given the court a number of cases, some writing that identifies the person to be charged is there and there's no chance of a fraudulent transaction or the other side trying to make a purse out of a sow's ear here, then as the federal case there that I cited, the Seventh Circuit case, says you relax the statute of frauds because there's no question a contract was in fact formed. Then, because a statute of frauds is not a substantive piece of legislation that requires a signature to make something valid, it's there to prevent something not right from happening. If that were the case, this legislature just said no contract for the sale of real estate is valid until signed by both parties. That would be a quick way to solve the problem. That's not what the statute says and that's not what the case law provides. In fact, the case I cited of Jones v. Olson is case in point. There, the person to be charged did sign the contract. The person wanting to enforce the contract got the contract enforced because that person endorsed a deposit check. And the deposit check had written on it the parcel that was in question. The court found, therefore, that is a writing sufficient to bind the party to be charged. There's not any difference here. That email or series of emails clearly shows the intent of Frontier to sell this property to my client. But Jones is clearly distinguishable. We're talking about a person actually writing a check pursuant to the terms of the contract, right? No, they endorsed the check. Yes, signing the check. We don't have anything like that. We have Dexter Craig's email. That's what the case is driving at. I have a question about Mr. Wood's mail, Dexter Craig 11. Part of it says, we will order title policy for the reference property. It can close as soon as it is received and reviewed. Well, that means that they're not going to, but I thought you said maybe there was a later communication where Wood said, we're getting the title, we'll get the, take care of the title right away. Title was ordered out on June 20th, the same day as all this other stuff. Well, what's the reference to the title policy? Pardon? The reference to the title policy. Yes. It's only what he just read, correct? Yeah, we will order title policy for the reference property and can close as soon as it is received and reviewed. Do they mean they will receive and review the title policy, or do they mean we will receive and review your signed copy, or the other side's signed copy of the contract and the title policy? I think it clearly, just the semantics of the sentence would require it applies to the title policy. The title policy. I don't see how we can graft in some of that. Yeah, I just wanted to make sure I understood. Right. And what I gave to the court, because this is a unique situation, we're in the age of e-commerce now. Just like the trial courts, the appellate courts all require e-filings, and granted there is some difference because we all sign up before we can, with the court, before we can put the slash S slash. The bottom line here is there's no difference between what Dexter Craig did. If he didn't have the authority to do what he did, and he flat out said in that e-mail, our legal department has approved this today. If he sends that out and that's not his offer to sell, and he's got the authority to do it, then we are either playing a game with my client and his lawyer. It's a hoax. It's a joke. I don't know what else it could be other than they intended to be bound here. And our guy, Mr. Bentley, signs off on it, and it's returned within an hour or so of it being sent. And then title is ordered. My client was ready on June 30th to pay $115,000, and on June 29th they get the e-mail from Frontier that says our strategic business needs have changed. They didn't say, hey, we didn't sign this thing. We're not bound. They're just saying we changed our mind. And once an offer has been accepted, we have a binding contract, and that means all that's left is can they escape under the statute of frauds, and they're using the statute in a way that it was never designed to be used. They're saying without that signature in ink, instead of the e-mails where the whole contract was attached, which makes it all part of the e-mail, you can't go forward against us. It's an escape hatch they're looking for because they went and sold the property to somebody else, and we see that in their motion to dismiss count one that was filed with this court. It's clear. I couldn't get a bond for my client at $960,000. The bond premium would have been six figures, more than what we're even talking about here. So when you put all that together, everything they have put in their reply brief is inapposite. The cases they cite are inapposite. None of them work on the facts of this case. They were all decided on other issues, and they never once mentioned Dittman or St. John's Holdings, which are the only two sister state cases in 2013 and 2015 I could find in an expanded legal search of the effect of an e-mail or a text message serving as the signature. And both cases, especially St. John's Holdings out of Massachusetts, went into a long dissertation of all the stuff that we're talking about here and how we got to this point with e-commerce. And they clearly indicated, yes, that e-mail is a signature, and so did Dittman in Texas. These are two large states with a lot of litigation. Now, didn't Dittman involve an electronic signature? I believe they were an e-mail case in Dittman and a series of e-mails and a text message in St. John's Holdings. Was there an electronic signature? Pardon? Was there an electronic signature? I don't believe it's like what we do here in the appellate court. No, I think they just identified themselves in the e-mails. This is a tough case because it won a first impression, I believe, in Illinois. And it's something that I think really needs to be decided and discussed because we're in the world of e-commerce and e-filing of everything, and we've got to get a handle on how this is to be handled. Now, in the non-real estate world, e-mails are fine. All the courts, both in Illinois and at the federal level of Seventh Circuit and in the district courts in Illinois, they've all concluded that e-mails are signatures. It's just this peculiar situation where we have a piece of real estate involved. And because this is a very expensive piece of real estate, you know, I'm just asking the court to carefully look at this because it is a matter of a great need in this state to resolve the issue, and certainly it is a great need in between the litigants here as well. Counsel, I'd like to go back to Dittman. And in that case, is it true that basically the position was that the e-mails interpreted together should be interpreted as an option contract and that they were saying they did not satisfy the statute of frauds? It did satisfy the statute. Well, that was the allegation the defendant was saying it doesn't satisfy it, right? Right. Right. And so I note here that the court says that the e-mails were signed with electronic signatures. Do you disagree with that? I have not seen, obviously, anything more than what was reported, so I only know what's in the case holding. Well, that I'm reading from the case. And whether that was something that was done ahead of time, like, for example, we do here in the appellate court so we can file stuff, I can't answer the question. I don't know. It's my understanding that it was strictly a series of e-mails that were held to be a signature. Okay. Thank you, Counsel. You'll have additional time on rebuttal if you so desire. Mr. Munson? Good afternoon. May it please the Court, Counsel. My name is Dane Amundson. I represent the defendant in this case, Frontier North. I represented them in the trial court level as well. As the Court has just heard, plaintiff has framed this as a case which primarily revolves around whether an e-mail can substitute for a signature in the sale of real estate, thereby cutting through a statute of fraud's defense. This is, in plaintiff's framing of the case, then the application of relatively new technology to a very, very old rule and how that interaction would play out or ought to play out. However, prior to getting to that question, and there may never be a need to answer that question in this case, there are a myriad of other issues that need to be addressed as well. And a decision in our favor on any one of these other issues would be dispositive and would be sufficient to affirm the order from the Court below. The first issue is if we suppose that an e-mail, which is transmitting an unsigned agreement, if that e-mail can constitute a signature of the same agreement, let's suppose that that is true for the sake of argument, perhaps just for those purposes only. Start me all over. What am I supposed to assume here? Well, I'm attempting to frame the case as best I can in one sentence. Okay. Let's suppose that an e-mail which transmits an unsigned agreement constitutes a signature of that agreement. So the moment it's attached to an e-mail and someone clicks their mouse and says send, now the agreement's signed. And that is plain exposition in this case, that by transmitting it via e-mail, it was signed, at least for the purposes of statute of frauds. Well, if that is the case, then let's turn to the e-mails in this case. Who signed them? Apparently it was somebody named Dexter T. Craig, sometimes Craig Dexter, I think he's also identified in the record. But Mr. Craig is not a party to the contract. He's not a party in this case. He's not the owner of the real estate. The contract which is attached as an exhibit to the complaint discloses that the parties in this case are the plaintiff and the defendant, Frontier and C.B. Bloomington. Dexter Craig's not a party. I believe the contract also indicates that Frontier is the owner of the property that's being sold, not Dexter Craig. So Dexter Craig, to the extent he could sign this agreement with an e-mail, and to the extent it was proper for him to do that, he is bound himself and not Frontier. Mr. Amundson, were these issues raised below? They were indeed, Your Honor. This was a matter that was brought before the court prior to the hearing on the 2619 motion. The issue of him not having authority to bind them or simply the issue of he's not a party, both? Both. I could pull the record out if you'd like. I believe that was argued in our reply in support of our motion to dismiss pursuant to 619.1. So Craig, Dexter Craig was not the defendant's representative there in some capacity? I don't know that the record discloses that he was or was not. Okay. Well, I thought your argument was he didn't have authority to sign on behalf of the defendant. That is an argument that I make. I haven't gotten to that argument yet. But my primary argument a moment ago was simply that if he signed, he's not a party. And if he bound anyone, he bound himself. The record doesn't reflect that he is an employee of Frontier, that he's a person with authority to enter into real estate transactions on behalf of Frontier. I thought that I just asked you that. You're confusing me. So I thought your response to my question was there's nothing in the record to indicate whether Craig was or was not the defendant's representative. Didn't you just say that a minute ago? No, I agree, Your Honor. That's correct. There's nothing in the record that would indicate that he was the representative, other than the fact that he's sending e-mails, which are meant to bind Frontier. Okay. So what's your argument, then? Well, if his signature, if his e-mail is his signature, then it is just his signature. Okay. Unless the record did reveal that he was an agent and had the authority to do that. Absolutely. If he was an agent and he had the authority and compliance with the statute of frauds, then he would be. Then he would be the agent of Frontier and he would have bound them. And did you argue that to the trial court, that he did not have that authority, that he was not an agent? Your Honor, yes. That is in the same pleading that I mentioned a moment ago, the reply in support of our motion to dismiss. You mean your motion to dismiss here? The motion to dismiss in the trial court, Your Honor. Okay. Apologize for the confusion. So Justice Turner's question, perhaps I was confused to some degree because that is sort of the next subject of argument. Let's suppose he had the, let's suppose he signed the agreement by e-mailing it. Well, that presents another statute of frauds problem because the statute of frauds requires the signature of an agent. If an agent is acting on behalf of a principal, then you have to have a signature of the principal which grants authority to that agent. You have to have a signed writing from the principal which grants authority to that agent to conduct that particular business. And in this case, there is nothing in the record that would show that Mr. Craig had that signed authority from the Frontier Company. And in order to get that authority, I assume you'd have to get the president or the vice president or the board of directors or the board of shareholders or somebody to sign something and say, Mr. Craig, go ahead and find the company on this real estate transaction. That is a requirement of the statute of frauds. It was raised at the trial court level and argued. And there's nothing in the record which would indicate that Mr. Craig had that written signed authority. At times in his, in its brief, the plaintiff relies on the doctrine of apparent authority, arguing that Mr. Craig had apparent authority to enter into this transaction. However, apparent authority requires some representation by the principal that this individual has the authority that you come to believe he has due to those representations. There's nothing in the record from Frontier indicating that Frontier ever made representations about, talk to Mr. Craig, he's our guy and he's going to handle this for us. And the second problem with pointing to apparent authority as a way of getting through the statute of frauds defense is that it doesn't appear to obviate that additional signature requirement. So I don't think it would be enough for there to be mere representations by Frontier that go talk to Dexter, he'll handle the rest of this. What you would need is you would need a signed writing which would indicate that authority existed in order to rely on it. So now I will discuss the effect of e-mails and whether an e-mail transmitting an unsigned contract can constitute a signature of that contract. And it certainly doesn't seem... Counsel, before you get to that, what if any is the significance of the fact that opposing counsel sent a letter basically saying, okay, well, an e-mail saying here's the contract signed, send it back to us once it's been signed? Well, it's an indication that the parties contemplated that we really need both parties signing the agreement. That a condition of an enforceable contract, we all know it to be true, is that both of us sign the agreement and we deliver it. So it's certainly an indication of the intention of the parties, although I don't know how much stock we ought to place in that because of the posture of the case. As to the effect of transmitting an unsigned contract via e-mail and whether that constitutes a signature of the same contract, a signature can be any mark or indication that signifies an adoption, authentication and adoption of a particular document. What we have here is an e-mail which merely states, here's your document. It doesn't indicate that the company is authenticating and intends to be bound by this particular document. And the only name that appears on the e-mail is the name Dexter T. Craig. Frontier North doesn't appear anywhere on that document. The name that appears on the e-mail is Dexter T. Craig and it isn't a signature. It's a type name and it's there likely to identify the sender. It lets you know this is the person you're dealing with. If you want to write him a letter, here's his address. If you want his phone number, it's right there. It's the little logo that goes at the bottom of everybody's e-mails. There's nothing unusual about that. And there's nothing that would indicate that the company is adopting or authenticating this particular document at the moment they send it. It's an e-mail in the same way that people exchange documents with each other all the time. If we decide that sending e-mails constitutes a signature of that e-mail, we all have to change the way we do business quite a bit. Because people are shipping documents back and forth to one another all the time. And what you don't want to do is accidentally bind yourself to a contract. So for the reasons stated before the court today and in our brief, we would ask that the court affirm the trial court's order. Thank you. Thank you, Mr. Robinson. Mr. Schultz, any rebuttal? Yes. Please support counsel. The other issues that counsel raises, I think, are red herrings. Who signed the e-mails, he asks. And then he tries to say, Dexter Craig did this in his personal capacity. That is a leap too far to go. If Dexter Craig didn't have authority, what's he doing? It makes no sense. This absolutely is befuddling why a major corporation acts through its employees. It's the only way it can act. It's sending this stuff out and it's meaningless. You know, if he wanted to say this isn't valid until we have signed it in ink, that's all he had to do is put that in his e-mail. He didn't put any restrictions of any kind in any of those e-mails. And counsel, while he said he raised the issue, it was merely argument he raised in the trial court. There was nothing raised by way of affidavit. All they had to do was come up. President of Frontier North Inc. says, we have no idea what Dexter Craig was doing here. He was not authorized to act on behalf of Frontier North. I think that would have probably solved the issue real quick. But you say it was raised in argument so the trial court had an opportunity to consider that issue? Right. And I rebutted and just saying, Judge, this is speculation. Judge Foley heard the arguments. I mean, he's just throwing like it's a shotgun. He's tossing stuff out there to see what sticks. And he's admitted right here in this courtroom that there's nothing in the record showing authority or lack of authority in Dexter Craig. So we have to take the case where we find it. If he really believed that, he would have come up in the trial court with parole evidence. I cited the Fritsche case to this court, which says the trial judge can take evidence on the intention of the parties. And that was not done. He was free to do that. He's in control of the information at that point. All I have is a client who's got a contract and is now sitting on the sidelines without anything to show for it. Even if this court has some reservations about this, a remand back to the trial court is in order simply to find out did Dexter Craig have this authority or didn't he. I'm willing to bet you he did. Or he's a liar. He put this contract has been approved by legal today in his email. How could the legal authorities do that if he didn't have authority? Plus there's silence. And the silence here is they wait until the day before payment is due and just say our needs have changed. That is an acknowledgment. Silence can be an acknowledgment. And if there were no intentions, all I can say is then why were they sending these emails? Why did they prepare a contract? It makes no sense other than it was a contract and they know it was. And as we know from their motion, they sold it to somebody else for nearly a million dollars. Thank you. Thank you, counsel. This matter will be taken under advisement and will be in recess until the next case.